# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **BRYAN CLAYTON ROBERTS** | **CIVIL ACTION NO. 13-2834-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **JERRY W. GOODWIN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Bryan Clayton Roberts ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on October 4, 2013. Plaintiff is currently incarcerated at the Louisiana State Penitentiary, but claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana. Plaintiff names Jerry Goodwin, Lonnie Nail, Mark Hunter, Ron Rawson, George Savage, James M. LeBlanc, and Chris Evans as defendants.

Plaintiff claims that he was confined to disciplinary detention extended lockdown because he was convicted in January 2009 of simple escape from Forcht Wade Correctional Center. He claims that he was detained on disciplinary detention extended lockdown for more than three years without receiving a personal review board hearing. He claims inmates

on disciplinary detention extended lockdown routinely have a classification review every 90 days. Plaintiff claims he was denied a proper review board hearing and was maliciously denied a status change. He claims he was retaliated against and punished twice for the simple escape conviction.

Plaintiff claims that while he was in disciplinary detention extended lockdown, he was denied participation in educational, rehabilitative, and religious programs, access to the prison law library, package facilities, canteen, contact visits with his family, telephone (only once a month), and personal property. He claims he was fully restrained when he left his cell. He claims he was only allowed three books in his cell. He also claims he was denied the opportunity to work. He claims the conditions of his cell confinement caused him to suffer extreme stress and daily tension which resulted in physical deterioration and hypertension. He claims he was denied adequate exercise and participation in sports.

Plaintiff admits that he was allowed out of his cell for one hour each week. He claims this included 50 minutes in the yard. He claims he was sentenced to loss of yard and rec for 12 weeks. He claims he was only allowed to exercise in a small cage.

Plaintiff claims that when he was denied access to the law library, he was working on his state court criminal case through a federal habeas petition and this civil action lawsuit. He claims he was represented by inmate substitute counsel for his habeas petition. He claims he was substantially delayed in obtaining judicial review in both matters because he was denied access to the law library.

Plaintiff claims he was substantially delayed judicial review of his federal habeas

petition because his inmate counsel deliberately filed his federal petition for habeas relief untimely. He claims his inmate substitute counsel took more than eight months to file his petition. Plaintiff claims he was caused harm because he was denied access to the law library. He claims his federal habeas petition was denied as time barred.

Plaintiff claims James LeBlanc refused to send his second step response regarding this complaint and his failure to follow DOC rules and regulations could have caused a delay and dismissal of his case. He also claims there were no meaningful legal materials in the law library to help him file his legal matters in this complaint.

Accordingly, Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and any other relief to which he is entitled.

## LAW AND ANALYSIS

**Due Process in the Disciplinary Process**

Plaintiff claims he was denied due process during his prison disciplinary proceedings. He claims he was detained on disciplinary detention extended lockdown for more than three years without a personal review board hearing. He claims he was denied a status change and was punished twice for his simple escape conviction. He claims he was sentenced to loss of yard and recreation for a period of 12 weeks. He claims that while in disciplinary detention extended lockdown, he was denied access to package facilities, the canteen, contact visits, the telephone, and his personal property. To the extent Plaintiff contends he was punished without due process, that claim is not cognizable.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the

Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431. Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff does not allege that the disciplinary action affected the duration of his original sentence or that the disciplinary sentence was atypical of the prison environment. To the contrary, Plaintiff's allegations concern placement in disciplinary detention extended lockdown which is far from "extraordinary." This court finds that under Sandin, Orellana and Madison, placement in disciplinary detention extended lock-down does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns. Hence, Plaintiff's claims that he was punished without due process

of law are without merit.

**Classification**

Plaintiff claims he was maliciously denied a status change. This is not a claim that this court can resolve. Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

Accordingly, Plaintiff's claims regarding his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as

frivolous.

**Program Denial**

Plaintiff claims that while in disciplinary detention extended lockdown, he was denied participation in educational, rehabilitative, work, and religious programs.

In order to state a constitutional claim for either a procedural or substantive due process violation, Plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir.2000); accord Sandin v. Conner, 515 U.S. 472, 481–83, 115 S.Ct. 2293 (1995) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); Bryan v. City of Madison, 213 F.3d 267, 274 (5th Cir.2000) (property interest). However, neither the Due Process Clause, nor any other provision of the Constitution affords inmates the constitutional right to educational or rehabilitative programs or services. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir.1988); see also Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.1991) (prisoners do not have a constitutional right to "social services."); Newman v. State of Alabama, 559 F.2d 283, 292 (5th Cir.1977), rev'd in part on other grounds sub nom., Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057 (1978) (prisoners do not possess a protected liberty interest in educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir.1995) (no federal constitutional right to participate in an education or

rehabilitative program while incarcerated).

Finally, Defendants' alleged failure to provide Plaintiff with the types of services and programs he desires does not constitute cruel and unusual punishment in violation of the Eighth Amendment. The lack of rehabilitative and educational programs does not by itself constitute cruel and unusual punishment, nor does the Eighth Amendment require the provision of every amenity needed to avoid mental, physical, or emotional deterioration. See Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir.1986), citing, Newman v. Alabama, 559 F.2d 283, 291 (5th Cir.1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3144, 57 (1978).

Accordingly, this claim should be dismissed with prejudice as frivolous.

**Conditions of Confinement**

Plaintiff claims he was fully restrained when he left his cell. He claims he was only allowed three books in his cell. He claims he was denied adequate exercise and participation in sports. He admits that he was allowed out of his cell for one hour each week which included 50 minutes in the yard. He claims he was only allowed to exercise in a small cage. He claims the conditions of his cell confinement caused him to suffer extreme stress and daily tension which resulted in physical deterioration and hypertension.

Plaintiff filed these claims pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth

Amendment, prison officials are required to provide humane conditions of confinement ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991). First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)). Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979. In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court recently defined as knowing of and disregarding an excessive risk to inmate health or safety. See id., 114 S. Ct. at 1979.

Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement. Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds the facts alleged do not support a conclusion that Defendants' conduct was sufficiently harmful enough to deprive Plaintiff of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.

Plaintiff claims he was denied adequate exercise and participation in sports. He claims he was only allowed to exercise in a small cage. Plaintiff further claims he was fully restrained when he left his cell. He claims he was only allowed three books in his cell. After considering the totality of the specific circumstances that constitute the conditions of Plaintiff's confinement, this court finds that the facts alleged do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324. The court finds that Plaintiff's claims standing alone, simply do not rise to the level of cruel and usual punishment as defined by the jurisprudence. Inmates do not have a protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation ." Lewis v. Smith, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir.2001); Stewart v. Winter, 669 F.2d 328, 336 n. 19 (5th Cir.1982); see also Martin v. Scott, 156 F.3d 578, 580 (5th Cir.1998) (affirming limits on recreation time). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." Lewis, 2001 WL 1485821 at *1 (citation omitted). Plaintiff does not claim he was denied all exercise or that he could not exercise in his dorm. In fact he admits he was allowed out of his cell for one hour each week which included 50 minutes in the yard. Furthermore, he has only made a vague, conclusory claim that his health deteriorated because of the inadequate recreation time.

Furthermore, the deprivations alleged by Plaintiff regarding restraints and book limits simply do not support a finding that Defendants' conduct was sufficiently harmful enough

to deprive Plaintiff of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S.Ct. at 2324. In this case, Plaintiff states no facts that would satisfy the threshold requirements for an Eighth Amendment violation. Thus, the court does not consider the deprivations alleged to be sufficiently serious.

Accordingly, the conditions alleged do not rise to the level of cruel and unusual punishment and should be dismissed with prejudice as frivolous.

**Law Library Access**

Plaintiff claims he was denied access to the law library. He claims he was working on his federal habeas petition in this court and this civil rights complaint when he was denied access to the law library.

Prisoners have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)). However, this constitutional guarantee is not without limitation. Lewis v. Casey, 518 U.S. 343 (1996) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)). In Lewis v. Casey, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts." While the Supreme Court reaffirmed a prisoner's right of access to the courts in Lewis, the Court limited the parameters of Bounds and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation. In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is

derived from the doctrine of standing. Lewis, 116 S.Ct. at 2179. The Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment. In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983. The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct. Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous. Plaintiff has failed to demonstrate that he lost the right to commence, prosecute or appeal any suit as a result of the alleged denial of access to a law library. Plaintiff admits that he was represented by inmate substitute counsel for his habeas petition, but complains that his inmate substitute counsel untimely filed his petition. Furthermore, Petitioner filed a letter (Doc. 3) shortly after he filed his federal habeas petition in 5:10-cv-1889 which demonstrates that he apparently miscalculated his deadline and was aware that there was a deadline to file his petition. Plaintiff next complains that James LeBlanc refused to send his second step response regarding this complaint and this could have caused a delay and dismissal of his case. Plaintiff's complaint in this court reveals on its face that he was able to clearly present his claims to this court. Furthermore, this

complaint was not dismissed for failure to exhaust administrative remedies. Thus, he has failed to state any actual injury.

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 1st day of March, 2017.

Mark L. Hornsby
U.S. Magistrate Judge